ALICE C. CAFFREY, appellant,

*v.*

LEWIS W. CAFFREY, respondent.

[Argued June 29th, 1908.   Decided July 1st, 1908.]

On the facts of this case, as recited in the opinion, the petitioner is entitled to a final decree of divorce on the ground of willful, continued and obstinate desertion.

On appeal from a decree of the chancellor, whose opinion is reported in *70 Atl. Rep. 922.*

*Messrs. Carrow & Kraft,* for the appellant.

The opinion of the court was delivered by

TRENCHARD, J.

This is an appeal from a decree of the court of chancery dismissing the appellant's petition for divorce.

The parties resided in Camden and were married in that city January 8th, 1902. On the night of the marriage, shortly after the ceremony, and at the home of the wife's parents, the defendant told the petitioner, in the presence of her mother, that "he was not fit to be a married man and was going to his home," and also that he was being attended by Dr. L.———— and "would be better after awhile." The defendant then went to his home and the petitioner remained with her parents.

The defendant called upon the petitioner two or three nights following their marriage and then remained away about three weeks, when he called and said he would "take her to housekeeping in June." On this last-mentioned visit he told his wife that "he had been to Mr. Hilton, the minister who married us, and asked him to tear up our marriage certificate," and when she asked him "what he did that for," he said, "that he was afraid of Miss F.———— M.————." He never, after the night of the marriage, referred to his physical condition, nor gave that as an excuse for not living with his wife. He never visited the petitioner again, and never contributed to her support, although he resided in the same neighborhood.

In February, 1902, after frequently asking her husband to provide a home for her and to support her, the wife brought a suit for alimony. The parties next met, as a consequence of that suit, at the office of the solicitors of the petitioner. At this interview the husband promised to go to housekeeping with his wife in June, 1902, whereupon the suit for alimony was abandoned.

In June, 1902, the wife, having heard nothing from her husband, went with her mother to his place of business in Camden to remind him of his promise. She asked him to carry out his promise to take her to housekeeping and he replied that he could not then, but would later on. Whereupon the wife said to him, "You will go back on your word," and he replied, "No, I won't. I will go right down to Squire Schmitz's with you." Thereupon he took his wife to Squire Schmitz's office, where he signed a paper-writing, as follows:

"This agreement made this tenth day of June, A. D. 1902 between Lewis Caffrey and his wife Alice Caffrey both of the City and County of Camden and State of New Jersey, I Lewis Caffrey give to my wife Alice Caffrey the Privilege to go and come whenever she likes in male and female company at Day or night. As I have not the time to go with her, and she has the right to live with her parents until I am ready to go to housekeeping or go with my wife parents to live and when I go to live with her parents I hereby agree to pay one half of the expenses of the keeping of the house. That is in a few months time it is my intention to live with her as I cannot at present.

"I Alice Caffrey agrees to extend the time from a few months to the month November 1902 but it is agreed that she will not go and live with his mother,

"LEWIS W. CAFFREY.

"Signed Sealed and delivered in the presence of
    "PHILIP SCHMITZ."

Within two weeks after making this so-called agreement, the husband, without the knowledge or consent of his wife, went "out west," where he remained about one year, during which time he had no communication with his wife and furnished her no support.

In the summer of 1903 the husband returned to the neighborhood of Camden, where his wife and her father and her mother saw him on the streets of Philadelphia and Camden two or three times, in company with Miss F———— M.————, and on such occasions the defendant avoided them by crossing the street or going up a side street. On one occasion his wife, in the presence of her mother, went up to him and tried to engage him in conversation, when he said, "I don't know you."

On April 6th, 1906, the wife filed the petition for divorce in this cause on the ground of desertion. The matter was referred

to a special master, who advised a decree dissolving the marriage between the parties. The learned chancellor, without filing an opinion, by decree dated December 31st, 1907, dismissed the petition, and from such decree the petitioner appeals to this court.

That the husband has never lived with his wife and has never supported her, although often requested so to do, clearly appears from the depositions. And this, too, without any fault upon the part of the wife. Such voluntary separation of the husband from the wife, for the prescribed time, without the latter's consent, without justification, and with the intention of not returning, is desertion upon the part of the husband. *Sergent* v. *Sergent, 33 N. J. Eq. (6 Stew.) 204.*

As bearing upon the consent of the wife, and the intention of the husband, the so-called agreement of June 10th, 1902, requires consideration.

Without reference to the fact that it was not signed by the wife, or its other informalities, it is certain that the agreement did not give to either spouse, as against the other, the right to continue the separation. *Miller* v. *Miller, 1 N. J. Eq. (Sax.) 391; Aspinwall* v. *Aspinwall, 49 N. J. Eq. (4 Dick.) 302.*

Consequently, the only question is whether it indicates or gives rise to a change in the mental attitude of either party, showing consent to separation instead of protest on the part of the wife and obstinate persistence on the part of the husband.

The answer to this question depends not alone upon the language of the paper-writing, but upon a consideration of all the circumstances of the case as disclosed by the evidence. From these we incline to think that, in extending the time for going to housekeeping from June 10th, 1902, until the next following November, the wife was but yielding to the necessities of the case, still recognizing, as the law recognized, the continuance of marital obligations, both for herself and her husband. We think it equally clear that the husband was fully aware of this state of mind of his wife and remained separated from her, not because he believed she assented to such separation, but because his resolution never to cohabit with his wife was unaltered. Such a state of facts constitute willful, continued and obstinate deser-

tion. *Power* v. *Power, 66 N. J. Eq. (21 Dick.) 320; 1 Bish. Mar. & D. (6th ed.)* § *805b.*

This conclusion as to the state of mind of the parties we incline to think is compelled by the undisputed facts. The husband appears to have been infatuated with another woman, and, immediately after the marriage ceremony was performed, showed his determination, always adhered to, not to cohabit with his wife. He was the owner of a house in Camden, but refused to go to housekeeping there or elsewhere, or to in any manner live with or support his wife. When she began her suit for support he agreed to provide a home for her in order undoubtedly to get rid of the suit. When the suit was discontinued upon such promise he utterly failed to keep his agreement. When the wife again sought to make him fulfill his promise he proposed, as we think, for the purpose of quieting her, to sign the paper-writing under discussion. That his conduct was fraudulent from the beginning is shown by the fact that within two weeks after this last interview with his wife, without her knowledge or consent, he rented his house in Camden and absconded, remaining in the west for a year, and never thereafter communicated with her or made any provision for her support.

We incline to think that the wife, in yielding, under these circumstances, to her husband by granting the extension of time for going to housekeeping, did not consent to a separation even for the limited time named in the writing of June 10th, 1902, but, however that may be, the utmost effect that can be given to her acquiescence is to regard it as a consent to separation until the *month of November, 1902.* So considered, there rested upon the husband the undoubted duty to return to her and to provide a home for her at that time. In that duty the husband failed. He had fled and his whereabouts remained unknown until the following summer. Such conduct taken in connection with his failure to seek his wife upon his return to Camden in the summer of 1903, and his studied efforts to avoid her and her parents, rendered his conduct willful, continued and obstinate desertion for the statutory period prior to the filing of the petition.

The decree of the court below should be reversed, with costs, and the record forthwith remitted to the court of chancery to

the end that a final decree for a divorce from the bond of matrimony may be made in that court.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—16.